1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

10

11    KATHRYN MARIE MORGAN,              Case No. SACV 19-0002-AS

12                    Plaintiff,
                                        **MEMORANDUM OPINION AND ORDER OF**
13          v.
                                        **REMAND FOR AWARD OF BENEFITS**
14    ANDREW M. SAUL, Commissioner
      of Social Security,[1]

15                    Defendant.

16

17

          Pursuant to Sentence 4 of 42 U.S.C. § 405(g), IT IS HEREBY
18
      ORDERED that this matter is remanded for the Commissioner to
19
      calculate and award benefits to Plaintiff.
20

21
                                **PROCEEDINGS**
22

23
          On January 2, 2019, Plaintiff filed a Complaint seeking review
24
      of the Commissioner's denial of Plaintiff's application for a
25

26    _____

27          [1] Andrew M. Saul, Commissioner of Social Security, is
      substituted for his predecessor. See 42 U.S.C. § 405(g); Fed. R.
      Civ. P. 25(d).
28

period of disability and disability insurance benefits ("DIB"), under Title II of the Social Security Act. (Dkt. No. 1). On May 29, 2019, Defendant filed an Answer and the Administrative Record ("AR"). (Dkt. Nos. 13-14). The parties have consented to proceed before a United States Magistrate Judge. (Dkt. Nos. 9-10). On November 11, 2019, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Dkt. No. 21). The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND**

On February 16, 2011, Plaintiff, formerly employed as a customer service clerk and office manager (see AR 275, 284), filed a DIB application alleging a disability onset date of June 1, 2009. (AR 261-62). Plaintiff's application was denied initially on March 29, 2011 (AR 193-98), and on reconsideration on May 13, 2011. (AR 202-06).

On May 24, 2012, following a hearing (AR 123-43), Administrative Law Judge ("ALJ") Milan Dostal issued a decision denying Plaintiff's application. (AR 173-81). On August 12, 2013, the Appeals Council remanded the case to the ALJ. (AR 186-89). After another hearing (AR 144-67), ALJ Joseph P. Lisiecki, III, issued a decision on March 19, 2014, finding Plaintiff not disabled and denying the application. (AR 15-35).

The Appeals Council then denied a request for review (AR 1-6), and Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. (AR 830-32; see Morgan v. Colvin, Case No. SACV 16-0305-AS). On October 3, 2016, the Court remanded the matter for further proceedings. (AR 809-23).

On remand, ALJ Lisiecki held a hearing on October 3, 2017, and received testimony from Plaintiff, who was represented by counsel, and from Vocational Expert ("VE") Jaye Stutz. (See AR 791-804). On November 17, 2017, the ALJ issued a decision again finding Plaintiff not disabled and denying her application. (AR 769-83).

On November 3, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (See AR 752-58). Plaintiff now seeks judicial review of the ALJ's November 17, 2017 decision, which stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

**SUMMARY OF ADMINISTATIVE DECISION**

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity from June 1, 2009, her alleged disability onset date, to December 31, 2012, her last insured date. (AR 774). At step two, the ALJ found that Plaintiff had the following severe impairments: depression;

3

fibromyalgia/myofascial pain syndrome; and lumbar degenerative disc disease, status-post L5-S1 fusion and hardware removal. (AR 774).

At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR 775). The ALJ found that Plaintiff was mildly limited in understanding, remembering, and applying information, but moderately limited in social interaction and in concentration, persistence, and pace. (AR 775-76).

Next, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC")[2] to perform sedentary work[3] with the following additional limitations:

---

[2] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1). An RFC assessment requires the ALJ to consider a claimant's impairments and any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining a claimant's RFC, the ALJ considers all relevant evidence, including assessments made by consultative examiners, state agency physicians, and medical experts. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c), 416.913(c).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

> [Plaintiff can] occasionally lift and carry 10 pounds;
> frequently lift and carry less than 10; stand and walk
> (with normal breaks) for a total of 2 hours of an 8-hour
> workday; sit (with normal breaks) for a total of 6 hours
> of an 8-hour workday; postural limitations all
> occasional, no climbing ladders, ropes, scaffolds; avoid
> extremes of cold; and simple tasks, object oriented, so
> no work with the general public, can be around the
> general public but not required to interact with the
> general public.

(AR 777).

To make this finding, the ALJ considered Plaintiff's allegations, her treatment history, her work history and daily activities, and the medical opinions and evidence in the record. (AR 777-81). The ALJ generally found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely consistent" with the evidence in the record. (AR 778). The ALJ noted that Plaintiff's alleged inability to work was due to pain and lack of concentration. (AR 778). The ALJ also noted that Plaintiff's "statements about her daily activities indicate[d] she spends most of her time resting[,] which primarily consist[ed] of lying down as she also testifie[d] that sitting cause[d] her pain symptoms to increase." (AR 779). The ALJ noted that Plaintiff underwent lumbar spinal fusion surgery in December 2008,

but continued to complain of pain despite consistently normal examination findings. (AR 778). The ALJ observed that Plaintiff's treatment otherwise consisted of "a complex regimen of opiates, muscle relaxers, and antidepressants," along with some epidural and trigger point injections. (AR 778, 780). However, the ALJ found "little to no evidence of recommendations for other conservative treatment modalities including physical therapy, chiropractic care, acupuncture, massage therapy, or pool therapy," which, according to the ALJ, are "frequently used when individuals present with and are diagnosed with fibromyalgia or myofascial pain syndrome." (AR 779).

The ALJ gave "little weight" to each of the medical sources in the record. (AR 779-81). The ALJ noted that the one treating physician, Dr. Arthur Zepeda, M.D., essentially opined that Plaintiff was unable to work because her pain and depression caused limitations in sitting, standing, walking, and concentration that would prevent her from completing a full eight-hour day and would require her to miss several days per month. (AR 780). However, the ALJ gave Dr. Zepeda's opinions "very little weight" because he found them inconsistent with Plaintiff's normal examinations and her lack of "other treatment modalities" such as massage therapy, chiropractic care, and acupuncture. (AR 780-81). The ALJ gave "little weight" to the opinions of the non-examining state agency consultants, as well as the orthopedic surgeon who testified as a medical expert, because their opinions were not restrictive enough, and did not adequately account for all of Plaintiff's impairments. (AR 779-80).

1    The ALJ did not expressly rely on any portion of the medical
2    opinions in the record as a basis for the RFC determination.
3    Instead, after reviewing all the evidence, the ALJ gave the
4    following explanation for the RFC:

5

6        Overall, [Plaintiff] suffers from physical and mental
7        impairments that limit her ability to perform all work
8        activities at all exertional levels. [Plaintiff]
9        routinely and consistently presents with normal physical
10       signs and only mild progression over three years of her
11       lumbar spine disc disease based on the objective
12       findings. Yet, she does continue to need medical
13       intervention for pain symptoms. Balancing the subjective
14       complaints with the objective signs and findings results
15       in the conclusion [Plaintiff] is still capable of work,
16       but only at the sedentary level as that exertional level
17       allows for more sitting than standing and walking.
18       Additionally, when accounting for [Plaintiff's] mental
19       impairments, while the file lacks specific mental health
20       treatment records, it is reasonable to limit the
21       claimant's stress by reducing her interactions with the
22       public to only those that are incidental to her work.
23       Also, she is required to perform no more than simple
24       tasks as those allow for repetitive performance while
25       requiring little judgment or decision making, which
26       could be problematic given the impact her symptoms have
27       on her ability to sustain concentration. As such,

28

1          [Plaintiff] has the capacity for the [RFC] detailed

2          above given all of the factors discussed.

3

4    (AR 781).

5

6        At step four, the ALJ found that Plaintiff was unable to

7    perform any past relevant work. (AR 781). Based on Plaintiff's

8    RFC, age, education, work experience, and the VE's testimony, the

9    ALJ determined, at step five, that there are jobs that exist in

10   significant numbers in the national economy that Plaintiff could

11   perform, including "Document Preparer" and "Film Touchup

12   Inspector." (AR 782). Accordingly, the ALJ found that Plaintiff

13   was not under a disability, as defined in the Act, from June 1,

14   2009, to December 31, 2012, her last date insured. (AR 782).

15

16                          **STANDARD OF REVIEW**

17

18       This Court reviews the Administration's decision to determine

19   if it is free of legal error and supported by substantial evidence.

20   See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012).

21   "Substantial evidence" is more than a mere scintilla, but less than

22   a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir.

23   2014). To determine whether substantial evidence supports a

24   finding, "a court must consider the record as a whole, weighing

25   both evidence that supports and evidence that detracts from the

26   [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033,

27   1035 (9th Cir. 2001) (internal quotation omitted). As a result,

28   "[i]f the evidence can support either affirming or reversing the

                                    8

ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

Plaintiff claims that the ALJ erred by (1) failing to properly consider the medical evidence contained in the opinions of her treating pain management physician, Dr. Zepeda, in assessing her RFC; (2) finding Plaintiff's subjective complaints not credible; and (3) presenting a "flawed hypothetical" to the VE. (<u>See</u> Joint Stip. at 4-27). After consideration of the record as a whole, for the reasons stated below, the Court finds that the Commissioner's decision must be reversed because the ALJ materially erred in evaluating Plaintiff's statements and her treating physician's opinions. Furthermore, the Court finds that remand for an immediate calculation and award of benefits is warranted.

**A.** **The ALJ Erred in Discrediting the Treating Physician's Opinion and Plaintiff's Statements**

**1. Relevant Evidence**

Plaintiff testified in 2011 that after working for over twenty years, she was now unable to work due to her severe pain, and was "let go" from her most recent job, as an office manager, in June 2009 because she "was making too many mistakes and wasn't actually able to do it." (AR 127-28). She described pain in her back,

along with widespread pain in her neck, legs, and arms. (AR 129). She stated that the pain requires her to spend about two hours in bed in the morning and another hour-and-a-half to two hours in bed in the afternoon. (AR 153). She stated that she takes medications for pain and depression, including Norco, Lyrica, and Cymbalta. (AR 129, 132). She acknowledged that her medications help, but she still has pain. (AR 129). She also relieves the pain with rest, baths, and a heating pad, and she wears a back brace "all the time." (AR 133). At the most recent hearing, in 2017, she testified she rests as much as possible, and lies down for about three or four hours total between 9 a.m. and 5 p.m., as "[l]ying down is one of the only things that gives [her] relief." (AR 796-97).

Plaintiff estimated that she can stand for ten minutes at a time, sit for thirty minutes, and walk for thirty minutes. (AR 132). She stated that she could lift a gallon of milk (AR 135, 795-96), and is able to cook, but mainly uses the microwave. (AR 130). Plaintiff noted that she needs to use a railing to get in and out of the shower. (AR 308). She also testified that she is able to read, but not as long as she used to because of difficulty concentrating. (AR 131). She watches television for about two hours a day. (AR 131). She stated that she is able to do laundry if her children help her, and she can do some vacuuming and "very light" gardening, but cannot sweep the floor. (AR 134). She can drive, but only for five minutes, to pick up or drop off her children at school right down the street from her home. (AR 130).

She is able to shop for groceries once a week by "lean[ing] on the cart." (AR 134-35, 308).

Dr. Zepeda provided Plaintiff with pain management treatment on a monthly basis throughout the relevant period, beginning in August 29, 2009. (See AR 387, 712). He continued to treat her at least through May 24, 2017. (AR 1056). Dr. Zepeda diagnosed Plaintiff with fibromyalgia, chronic pain syndrome, and depression. (AR 531). He noted that Plaintiff's primary symptoms were diffuse widespread myofascial pain, along with fatigue. (AR 531, 713-14).

Regarding fibromyalgia, Dr. Zepeda opined that Plaintiff met the American College of Rheumatology criteria, with clinical findings of tenderness in multiple areas of the body. (AR 712). Dr. Zepeda stated that Plaintiff experienced chronic pain in multiple areas of her body, such as the lumbosacral spine, cervical spine, thoracic spine, shoulders, hips, legs, and knees/ankles/feet. (AR 713-14). He noted that Plaintiff had "constant aching pain with frequent episodes of exacerbation." (AR 714). On October 3, 2011, Dr. Zepeda rated Plaintiff's pain as 4-8 on a 10-point pain scale, and her fatigue as 6-8 on a 10-point scale. (AR 531). On December 26, 2013, he rated her pain as moderately severe, 8 on a 10-point scale (AR 714). Dr. Zepeda opined that Plaintiff's symptoms and functional limitations were consistent with documentation of her condition (AR 713), and were present since August 2009 (AR 717). He further opined that Plaintiff is not a malingerer. (AR 534, 714).

Dr. Zepeda submitted multiple assessments of Plaintiff's limitations, in 2011 and 2013. (See AR 387, 522-28, 531-35, 712-17, 1011-12). In the assessments, Dr. Zepeda opined that in an eight-hour workday, Plaintiff could sit no more than two hours total, stand/walk no more than two hours total, and could occasionally lift and carry less than ten pounds and rarely up to twenty pounds. (AR 387, 532). He also stated that Plaintiff required unscheduled fifteen-minute rest breaks every two to four hours, among other limitations. (AR 716). He opined that Plaintiff would miss work more than three times a month due to her impairments or treatment. (AR 526, 535, 716).

In an October 2011 evaluation of Plaintiff's mental impairments, Dr. Zepeda noted Plaintiff's diagnosis of depression, with symptoms including depressed mood, decreased energy, generalized persistent anxiety, difficulty thinking or concentrating, easy distractibility, memory impairment, and sleep disturbance. (AR 522-23). Dr. Zepeda opined that Plaintiff was "unable to meet competitive standards" in her ability to (1) remember work-like procedures; (2) maintain attention for two-hour segments; (3) maintain regular attendance and be punctual within customary, usually strict tolerances; (4) perform at a consistent pace without an unreasonable number and length of rest periods; (5) understand and remember detailed instructions; and (6) carry out detailed instructions. (AR 524-25). He further noted that Plaintiff's depression exacerbated her fibromyalgia symptoms. (AR 525).

Dr. Zepeda stated that Plaintiff was treated with lumbar spine injections and "a complex range of medications that consist[ed] of opiates (fentanyl patches, norco), muscle relaxants (Skelaxin) and antidepressants (Cymbalta) to manage chronic lower back pain and fibromyalgia pain." (AR 1011). Dr. Zepeda also stated that Plaintiff had "further utilized physical modalities such as massage, physical therapy and TENS unit[4] without sustained benefit." (Id.). Dr. Zepeda opined that despite some response to her treatment of pain medications and injections, Plaintiff remained unable to function "at a normal capacity." (Id.). He also noted that Plaintiff experienced medication side-effects, including drowsiness, dizziness, and cognitive issues. (Id.).

Aside from Dr. Zepeda's opinions, which were based on his long-term treatment of Plaintiff's pain conditions, the only other relevant opinions in the record are those of non-examining sources whose assessments are significantly less restrictive. (See AR 779-80). State agency medical consultants Kenneth Glass, M.D., and H. Han, M.D., who reviewed a limited record, opined that Plaintiff could sit for six hours, stand and walk for four hours, and lift and carry twenty pounds occasionally and ten pounds frequently, among other limitations. (AR 452-58, 516-17). Medical expert Eric Schmitter, M.D., an orthopedic surgeon, testified that Plaintiff could sit for six hours, with no standing or walking restrictions,

---

[4] "Transcutaneous electrical nerve stimulation (TENS or TNS) is the use of electric current produced by a device to stimulate the nerves for therapeutic purposes." <https://en.wikipedia.org/wiki/Transcutaneous_electrical_nerve_stimulation> (last visited Dec. 3, 2019).

and could lift and carry twenty pounds frequently and ten pounds occasionally. (AR 150). However, Dr. Schmitter admitted that these limitations did not account for Plaintiff's fibromyalgia because he lacked expertise on that impairment. (AR 150-51). Finally, state agency psychological consultant Paul Cherry, Ph.D., and psychiatric consultant P.M. Balson, M.D., opined that Plaintiff has only mild mental limitations. (AR 441-51, 515-16).

2. **Applicable Law for Weighing Treating Medical Opinions and Claimant Statements**

In an ALJ's assessment of medical opinions, a treating physician's opinion is generally afforded the greatest weight, though it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2); see Trevizo v. Berryhill, 871 F.3d 664 (9th Cir. 2017). When a treating physician's opinion is not controlling, it is weighted based on factors such as the length of the treatment relationship and the frequency of

examination, the nature and extent of the treatment relationship, supportability, consistency with the record as a whole, and specialization of the physician. 20 C.F.R. § 416.927(c)(2)-(6). If a treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Lester, 81 F.3d at 830-31.

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo, 871 F.3d at 678. First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison, 759 F.3d at 1014. If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider inconsistent statements, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and the claimant's daily activities. Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014). The ALJ also may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted). The ALJ must support the credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted).

### 3. Analysis

The ALJ discredited Plaintiff's statements and gave "very little weight" to the treating opinions of Dr. Zepeda, because the ALJ found them to be (1) inconsistent with Plaintiff's examinations, which tended to reveal normal strength, sensation, and range of motion; and (2) inconsistent with Plaintiff's course of treatment, which was based on prescription medications and injections, but lacked "other conservative treatment modalities" such as physical therapy or acupuncture. (AR 778-81). The ALJ

also gave "little weight" to the other medical opinions, from non-examining sources, because they reviewed a limited record and did not sufficiently account for Plaintiff's impairments. (AR 779-80). Rather than expressly rely on testimony or opinions to determine Plaintiff's RFC, the ALJ generally "[b]alanced the subjective complaints with the objective signs and findings" to conclude that Plaintiff could engage in "sedentary" work, but limited to six hours of sitting and two hours of standing or walking in an eight-hour workday, among other accommodations. (AR 777). However, the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's statements and Dr. Zepeda's opinions, and his conclusion that Plaintiff can sustain employment is not supported by substantial evidence.

(a)  Examination Evidence

The ALJ discounted Plaintiff's statements and Dr. Zepeda's opinions, as noted, because they reflected physical limitations in conflict with Plaintiff's normal examination findings. However, fibromyalgia - one of the main impairments for which Plaintiff was treated, and which the ALJ found to be severe - is a recognized medical condition that cannot be demonstrated by diagnostic tests or other objective medical evidence. Revels v. Berryhill, 874 F.3d

648, 656-57 (9th Cir. 2017); <u>Benecke v. Barnhart</u>, 379 F.3d 587,

589-90 (9th Cir. 2004); <u>see also</u> SSR 12-2p.[5]

Fibromyalgia is "a rheumatic disease that causes inflammation

of the fibrous connective tissue components of muscles, tendons,

ligaments, and other tissue." <u>Benecke</u>, 379 F.3d at 589. Typical

symptoms include "chronic pain throughout the body, multiple tender

points, fatigue, stiffness, and a pattern of sleep disturbance that

can exacerbate the cycle of pain and fatigue associated with this

disease." <u>Id.</u> at 590. Those suffering from fibromyalgia have

normal muscle strength, sensory functions, and reflexes. <u>Revels</u>,

874 F.3d at 656. Because "there are no laboratory tests to confirm

the diagnosis," fibromyalgia is assessed "entirely on the basis of

patients' reports of pain and other symptoms." <u>Benecke</u>, 379 F.3d

at 590; <u>see</u> <u>Revels</u>, 874 F.3d at 657 (a "diagnosis of fibromyalgia

does not rely on X-rays or MRIs"). The Agency has provided two

sets of criteria for diagnosing the condition, based on the 1990

American College of Rheumatology Criteria for the Classification

of Fibromyalgia and the 2010 American College of Rheumatology

Preliminary Diagnostic Criteria. <u>See</u> SSR 12-2p, at *2-3; <u>Revels</u>,

874 F.3d at 656-57. These criteria basically involve finding that

the patient has experienced widespread pain, the manifestation of

particular symptoms associated with fibromyalgia – such as fatigue,

[5] The Agency issued SSR 12-2p in 2012, recognizing fibromyalgia
as a valid "basis for a finding of disability." SSR 12-2p at *2.
Prior to this ruling, there was considerable debate about whether
a fibromyalgia impairment could render a claimant disabled for
Social Security purposes. <u>See</u> <u>Revels</u>, 874 F.3d at 656 (describing
SSR 12-2p as a "sea-change" in the law).

depression, or the presence of certain points of tenderness – and the absence of other disorders that would account for the pain. See SSR 12-2p, at *2-3; Revels, 874 F.3d at 656-57. The Agency's regulations also urge ALJs to consider "a longitudinal record whenever possible" because "the symptoms of fibromyalgia 'wax and wane,' and . . . a person may have 'bad days and good days.'" Revels, 874 F.3d at 657 (quoting SSR 12-2p)).

Here, Dr. Zepeda diagnosed Plaintiff with fibromyalgia and stated that Plaintiff met the American College of Rheumatology criteria, including widespread pain and clinical findings of tenderness in multiple areas of the body. (AR 712-14). Having examined and treated Plaintiff for this condition regularly over several years, Dr. Zepeda provided informed opinions of Plaintiff's physical and mental limitations resulting from the condition.

Despite Dr. Zepeda's long-term treatment of Plaintiff, and the accepted facts about how fibromyalgia is manifested, diagnosed, and treated, the ALJ frequently remarked in the decision that Plaintiff's statements and Dr. Zepeda's opinions conflicted with the normal examination findings. The ALJ stated, for example, that the limitations in Dr. Zepeda's letter from January 6, 2014, were "directly contradicted by the notations of range of motion within normal limits without pain from a treatment note dated March 20, 2013." (AR 780). The ALJ discredited Dr. Zepeda's assessments overall for failing to "explain how [Plaintiff] is able to be observed with fully normal physical signs, how the objective findings showed only mild progression of her disc disease in three

19

years, and yet her pain is so limiting that it precludes the ability to engage in work for more than half of a normal 8-hour workday." (AR 780). The ALJ thus failed to recognize that examinations showing normal muscle strength, tone, stability, and range of motion "are perfectly consistent with debilitating fibromyalgia." Revels, 874 F.3d at 666. Medical evidence such as this, which is known to be consistent with fibromyalgia, was not a valid basis for the ALJ to reject any portion Plaintiff's statements, Dr. Zepeda's opinions, or the limitations caused by Plaintiff's disabling pain.

(b)  Course of Treatment

The ALJ also discounted Plaintiff's statements and Dr. Zepeda's opinions because he found them to be inconsistent with Plaintiff's course of treatment. A conservative course of treatment may discredit a claimant's allegations of disabling symptoms. See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain). However, the ALJ did not find that Plaintiff's treatment was conservative. Indeed, there is no question that Plaintiff's treatment – which consisted of strong prescription pain medications such as Norco and fentanyl, along with epidural and trigger point injections - was not conservative. See Revels, 874 F.3d at 667 (fibromyalgia treatment consisting of a variety of prescription medications and steroid injections is not conservative); Trejo v. Berryhill, 2018 WL

3602380, at *15 (C.D. Cal. July 25, 2018) ("Fibromyalgia is treated with medications and self-care, rather than surgery or other more radical options." (quotations and citations omitted)).

Instead, the ALJ faulted a lack of conservative treatments – specifically, treatments such as "physical therapy, chiropractic care, acupuncture, massage therapy, or pool therapy." (AR 779). According to the ALJ, these "other conservative treatment modalities" are "frequently used when individuals present with and are diagnosed with fibromyalgia or myofascial pain syndrome." (AR 779). The ALJ thus discredited Dr. Zepeda's opinion because the physician did not "explain why" these other treatments were "excluded while [Plaintiff was] given more and more medications for her reported pain symptoms." (AR 780).

This is not a valid basis to discount Plaintiff's statements or the opinions of the physician who treated Plaintiff regularly for years. The ALJ did not provide any support for his finding that the absence of these "other conservative treatment modalities" undermined claims of debilitating fibromyalgia. Neither party has pointed to any credible support for such a finding, nor has the Court been able to locate any. As noted, prescription medications and injections are recognized fibromyalgia treatments. See Revels, 874 F.3d at 667; Trejo, 2018 WL 3602380, at *15. Moreover, the ALJ incorrectly found that Plaintiff had not utilized other treatments. To the contrary, Dr. Zepeda did in fact state that Plaintiff had "further utilized physical modalities such as massage, physical therapy and TENS unit," but "without sustained

21

benefit." (AR 1011). The treatment notes corroborate this. (See AR 352, 391-93, 396, 417, 427, 437, 494, 549, 566, 582, 593, 603, 617, 639, 684, 733).

**B.    Remand for an Immediate Award of Benefits Is Warranted**

For the reasons stated above, the ALJ failed to provide valid, adequate reasons to discount Plaintiff's statements and Dr. Zepeda's treating opinions.[6]    Having largely rejected these reliable sources, on faulty grounds, without any other reliable medical assessment of Plaintiff's limitations, the ALJ reached a decision that is not based on substantial evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) ("Because the ALJ did not provide clear and convincing reasons for excluding Lingenfelter's pain and symptoms from his assessment of Lingenfelter's RFC, substantial evidence does not support the assessment. Nor does substantial evidence support the ALJ's step-five determination, since it was based on this erroneous RFC assessment." (citations omitted)). Remand is therefore warranted. This Court has discretion to remand either for further administrative proceedings or, if certain elements are met, for an

---

[6] Although Dr. Zepeda's opinions conflicted with the other medical opinions, the ALJ gave "little weight" to each of those opinions and did not expressly rely on any of them in rejecting Dr. Zepeda's opinions or Plaintiff's statements, or in determining Plaintiff's RFC. (AR 779-81). Moreover, these other opinions were from non-examining medical sources, which "cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Revels, 874 F.3d at 664 (quoting Lester, 81 F.3d at 831).

immediate award of benefits.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).

The Ninth Circuit has stated that a remand for benefits is warranted "only in 'rare circumstances.'"  <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1100 (9th Cir. 2014) (quoting <u>Moisa v. Barnhart</u>, 367 F.3d 882, 886 (9th Cir. 2004)).  Such circumstances are present only where the following elements are satisfied: (1) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) "the record has been fully developed, [and] there are [no] outstanding issues that must be resolved before a determination of disability can be made"; and (3) the record as a whole, with the relevant testimony or evidence credited as a matter of law, "leaves not the slightest uncertainty as to the outcome of [the] proceeding."  <u>Id.</u> at 1100-01 (internal quotations and citations omitted).

Here, as to the first element, the Court has determined that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's statements and her treating physician's opinions.  Indeed, this is the second time that this Court has remanded Plaintiff's case due to the ALJ's failure to give valid reasons to discount Dr. Zepeda's opinions. (<u>See</u> AR 809-23; <u>Morgan</u>, Case No. SACV 16-0305-AS, Dkt. Nos. 16-17 (remanding for further administrative proceedings)).

The Court thus proceeds to the second element and the question of "whether further administrative proceedings would be useful." See Treichler, 775 F.3d at 1103-04. To determine this, the Court "consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether [Plaintiff's] entitlement to benefits is clear under the applicable legal rules." Id. (citing Moisa, 367 F.3d at 887). In this matter, the record is complete, and nothing remains to be resolved by further administrative proceedings. Dr. Zepeda's opinions are generally consistent with Plaintiff's testimony, as well as Plaintiff's work history, daily activities, and treatment, and do not conflict with the objective medical evidence, for the reasons discussed above. The contrary assessments of non-examining medical sources in the record were based on a very limited record and/or failed to adequately credit Plaintiff's documented fibromyalgia, and were thus appropriately discredited by the ALJ. (AR 779-80). Moreover, the improperly rejected limitations provided in Dr. Zepeda's opinions clearly establish that Plaintiff is disabled and entitled to benefits for the period at issue. Ample VE testimony supports this. At three administrative hearings before an ALJ, including the most recent hearing on October 3, 2017, a VE was presented with a hypothetical based on Dr. Zepeda's opinions, and the respective VEs testified that no jobs would be available for a person with those opined limitations. (AR 140-42, 166, 802-03).

Accordingly, because the record as a whole, with Plaintiff's testimony and Dr. Zepeda's opinions credited as a matter of law,

"leaves not the slightest uncertainty as to the outcome of [the] proceeding," remand for an immediate award of benefits is warranted. Treichler, 775 F.3d at 1101; see also Revels, 874 F.3d at 665 ("Because the VE testified that a claimant with the physical limitations outlined in Dr. Nolan's medical opinion would be unable to do any full-time work, Dr. Nolan's opinion 'alone establishes that [Revels] is entitled to benefits.'" (quoting Lingenfelter, 504 F.3d at 1041 n.12)); Ellen G. v. Saul, 404 F. Supp. 3d 1261, 1268-69 (C.D. Cal. 2019) (remanding for award of benefits because record unambiguously showed that plaintiff would be found disabled if improperly discounted medical opinion were credited as true); Rose v. Berryhill, 256 F. Supp. 3d 1079, 1092 (C.D. Cal. 2017) (same); Knorr v. Berryhill, 254 F. Supp. 3d 1196, 1220 (C.D. Cal. 2017) (same, and noting that "remanding for the ALJ to reconsider this evidence, which the ALJ already had an opportunity to review, would simply be allowing the ALJ to have a second bite at the apple.").

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the matter is REMANDED for the Commissioner to calculate and award benefits to Plaintiff.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 10, 2020.

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

25